**Nos. 23-1882, -1883**

**IN THE**

# United States Court of Appeals

**FOR THE FEDERAL CIRCUIT**

GLOBAL TUBING LLC,

*Plaintiff-Cross-Appellant*,

V.

TENARIS COILED TUBES LLC, TENARIS S.A.,

*Defendants-Appellants*.

On Appeal from the United States District Court
for the Southern District of Texas
No. 4:17-cv-3299, Hon. Keith P. Ellison

## CROSS-APPEAL REPLY BRIEF FOR CROSS-APPELLANT GLOBAL TUBING LLC

R. Paul Yetter
Jeffrey A. Andrews
Matthew C. Zorn
YETTER COLEMAN LLP
811 Main Street, Suite 4100
Houston, TX 77002
(713) 632-8000 (telephone)
(713) 632-8002 (fax)
pyetter@yettercoleman.com

Jeffrey A. Lamken
*Counsel of Record*
Rayiner I. Hashem
Lauren M. Weinstein
Walter H Hawes IV
Lois S. Ahn
MOLOLAMKEN LLP
The Watergate, Suite 500
600 New Hampshire Avenue, N.W.
Washington, D.C. 20037
(202) 556-2000 (telephone)
(202) 556-2001 (fax)
jlamken@mololamken.com

*Counsel for Cross-Appellant Global Tubing LLC*
*(Additional Counsel Listed on Inside Cover)*

Eugene A. Sokoloff
MOLOLAMKEN LLP
300 N. LaSalle Street, Suite 5350
Chicago, IL 60654
(312) 450-6700 (telephone)
(312) 450-6701 (fax)

*Counsel for Cross-Appellant*
*Global Tubing LLC*

# TABLE OF CONTENTS

Page

INTRODUCTION ....................................................................................... 1

ARGUMENT ........................................................................................... 4

I. The District Court's Decision Defies Governing Antitrust Principles ........... 4

A. The District Court's Failure To Perform the Required Examination of Tenaris's Patents Is Fatal ........................................... 4

B. Tenaris's Arguments About the Patents' Exclusionary Scope Cannot Salvage the District Court's Decision ..................................... 7

II. The District Court Examined the Wrong Time Frame ................................. 14

III. The District Court's Failure To Define the Relevant Market Precludes Summary Judgment ...................................................... 23

IV. Tenaris's Procedural Arguments Lack Merit ............................................. 25

A. Global Pled and Repeatedly Affirmed Its Antitrust Theory .............. 25

B. Judicial Estoppel Does Not Apply ................................................... 28

CONCLUSION ......................................................................................... 31

## TABLE OF AUTHORITIES

Page(s)

**CASES**

*Access Telecom, Inc. v. MCI Telecomms. Corp.*,
197 F.3d 694 (5th Cir. 1999) ....24

*Adjusters Replace-A-Car, Inc. v. Agency Rent-A-Car, Inc.*,
735 F.2d 884 (5th Cir. 1984) ....16

*Afram Carriers, Inc. v. Moeykens*,
145 F.3d 298 (5th Cir. 1998) ....30

*Ahrens v. Perot Sys. Corp.*,
205 F.3d 831 (5th Cir. 2000) ....29, 30

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986)....7

*Arbrook, Inc. v. Am. Hosp. Supply Corp.*,
645 F.2d 273 (5th Cir. 1981) ....10

*ASARCO, L.L.C. v. Mont. Res., Inc.*,
858 F.3d 949 (5th Cir. 2017) ....31

*Barrie v. Nueces Cty. Dist. Att'y's Office*,
753 F. App'x 260 (5th Cir. 2018) ....30

*Baxter Healthcare Corp. v. Spectramed, Inc.*,
49 F.3d 1575 (Fed. Cir. 1995) ....23

*In re Bilski*,
545 F.3d 943 (Fed. Cir. 2008) ....5, 17

*Casa de Cambio Comdiv S.A., de C.V. v. United States*,
291 F.3d 1356 (Fed. Cir. 2002) ....25

*C.E. Servs., Inc. v. Control Data Corp.*,
759 F.2d 1241 (5th Cir. 1985) ....22

*Cliff Food Stores, Inc. v. Kroger, Inc.*,
417 F.2d 203 (5th Cir. 1969) ....14

*Dacar v. Saybolt, L.P.*,
914 F.3d 917 (5th Cir. 2018) ....................29

*Deauville Corp. v. Federated Dep't Stores, Inc.*,
756 F.2d 1183 (5th Cir. 1985) ....................15, 20

*Dimmitt Agri Indus., Inc. v. CPC Int'l Inc.*,
679 F.2d 516 (5th Cir. 1982) ....................6, 14

*Domed Stadium Hotel, Inc. v. Holiday Inns, Inc.*,
732 F.2d 480 (5th Cir. 1984) ....................6, 7, 16

*Double Eagle Energy Servs., LLC v. MarkWest Utica EMG, L.L.C.*,
936 F.3d 260 (5th Cir. 2019) ....................31

*Egenera, Inc. v. Cisco Sys., Inc.*,
972 F.3d 1367 (Fed. Cir. 2020) ....................28

*Energy Heating, LLC v. Heat On-The-Fly, LLC*,
889 F.3d 1291 (Fed. Cir. 2018) ....................23

*In re Galaz*,
841 F.3d 316 (5th Cir. 2016) ....................28

*Gen. Indus. Corp. v. Hartz Mountain Corp.*,
810 F.2d 795 (8th Cir. 1987) ....................15

*Geneva Pharms. Tech. Corp. v. Barr Labs. Inc.*,
386 F.3d 485 (2d Cir. 2004) ....................17, 19

*Hughes v. Novi Am., Inc.*,
724 F.2d 122 (Fed. Cir. 1984) ....................10

*Hybritech Inc. v. Abbott Labs.*,
849 F.2d 1446 (Fed. Cir. 1988) ....................9

*Johnson v. City of Shelby*,
574 U.S. 10 (2014)....................26

*Johnson v. Diversicare Afton Oaks, LLC*,
597 F.3d 673 (5th Cir. 2010) ....................22

*Lenox MacLaren Surgical Corp. v. Medtronic, Inc.*,
762 F.3d 1114 (10th Cir. 2014) ........................................................................19

*Miranda-Rivera v. Toledo-Davila*,
813 F.3d 64 (1st Cir. 2016)............................................................................25

*Moore v. LaSalle Mgmt. Co.*,
41 F.4th 493 (5th Cir. 2022) .......................................................................7, 10

*Motion Med. Techs., L.L.C. v. Thermotek, Inc.*,
875 F.3d 765 (5th Cir. 2017) ..........................................................................27

*Multiflex, Inc. v. Samuel Moore & Co.*,
709 F.2d 980 (5th Cir. 1983) ..........................................................................15

*Multistate Legal Studies, Inc. v. Harcourt Brace Jovanovich Legal & Prof. Publ'ns, Inc.*,
63 F.3d 1540 (10th Cir. 1995) ........................................................................19

*New Hampshire v. Maine*,
532 U.S. 742 (2001)........................................................................................31

*Nunez v. Superior Oil Co.*,
572 F.2d 1119 (5th Cir. 1978) ........................................................................22

*Ohio v. Am. Express Co.*,
585 U.S. 529 (2018)........................................................................................12

*In re Oparaji*,
698 F.3d 231 (5th Cir. 2012) ..........................................................................29

*Otsuka Pharm. Co. v. Sandoz, Inc.*,
678 F.3d 1280 (Fed. Cir. 2012) ......................................................................24

*Perry v. Blum*,
629 F.3d 1 (1st Cir. 2010)...........................................................................29, 30

*Pittman v. U.S. Bank NA*,
840 F. App'x 788 (5th Cir. 2021) ....................................................................25

*Portillo v. Permanent Workers, LLC*,
793 F. App'x 255 (5th Cir. 2019) ....................................................................31

*Powers v. Nassau Dev. Corp.*,
753 F.2d 457 (5th Cir. 1985) ....................................................................4, 8, 22

*Precision Instr. Mfg. Co. v. Auto Maint. Mach. Co.*,
324 U.S. 806 (1945)................................................................................................29

*Rebel Oil Co. v. Atl. Richfield Co.*,
51 F.3d 1421 (9th Cir. 1995) ..............................................................................19

*Roy B. Taylor Sales, Inc. v. Hollymatic Corp.*,
28 F.3d 1379 (5th Cir. 1994) ..........................................................................6, 17

*Taylor Publ'g Co. v. Jostens, Inc.*,
216 F.3d 465 (5th Cir. 2000) ..............................................................................14

*Tops Mkts., Inc. v. Quality Mkts., Inc.*,
142 F.3d 90 (2d Cir. 1998) ...........................................................................17, 19

*TransWeb, LLC v. 3M Innovative Props. Co.*,
812 F.3d 1295 (Fed. Cir. 2016) ..............................................................................9

*United States v. Am. Airlines, Inc.*,
743 F.2d 1114 (5th Cir. 1984) .......................................................................14, 15

*United States v. Grinnell Corp.*,
384 U.S. 563 (1966)..................................................................................................5

*Walker Process Equip., Inc. v. Food Mach. & Chem. Corp.*,
382 U.S. 172 (1965).....................................................................................*passim*

*Whitaker v. Milwaukee Cty.*,
772 F.3d 802 (7th Cir. 2014) ..............................................................................25

*Williamsburg Wax Museum, Inc. v. Historic Figures, Inc.*,
810 F.2d 243 (D.C. Cir. 1987)..............................................................................17

## STATUTES

35 U.S.C. § 154(a)(2) ..........................................................................................17

## OTHER AUTHORITIES

Phillip Areeda & Herbert Hovenkamp, *Fundamentals of Antitrust Law* (4th ed.) (2022 update)....................5, 17

Herbert Hovenkamp, *Hovenkamp's Principles of Antitrust* (2d ed. 2020)....................5, 17

David Hricik, *Patent Ethics: Litigation* (2010)....................10

U.S. Dep't of Justice & Fed. Trade Comm'n, *Merger Guidelines* (2023), https://www.ftc.gov/system/files/ftc_gov/pdf/2023_merger_guidelines_final_12.18.2023.pdf....................16

U.S. Dep't of Justice, *Competition and Monopoly: Single-Firm Conduct Under Section 2 of the Sherman Act* (Mar. 18, 2022), https://www.justice.gov/archives/atr/competition-and-monopoly-single-firm-conduct-under-section-2-sherman-act-chapter-2....................16

5C Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* (3d ed. 2004)....................25, 26

# INTRODUCTION

Rather than defend the district court's summary-judgment decision, Tenaris attempts to rewrite it. The district court's rationale was clear. It nowhere denied evidence showing that, starting in 2017, Tenaris asserted fraudulently obtained patents to exclude its only known competitor—Global—from the quenched-and-tempered tubing market. Nor did it dispute evidence showing that Tenaris could use those patents and threats of litigation to exclude others as well. Instead, the court held that Tenaris's attempt lacked a dangerous probability of success because, ***two years after*** the monopolization attempt, ***after*** this litigation began, Tenaris's market share fell in the face of new entry. Appx31191(74:16-23).

Tenaris does not dispute that such analysis, by itself, is incorrect. When a defendant attempts to monopolize by asserting fraudulently obtained patents, courts must measure likelihood of success by examining "the exclusionary power of the illegal patent claim." *Walker Process Equip., Inc. v. Food Mach. & Chem. Corp.*, 382 U.S. 172, 177 (1965). Tenaris agrees: "If a patent covers an entire antitrust market," it concedes, "that means the defendant could obtain 100% of that market if its anticompetitive scheme succeeded." Tenaris.Resp.Br.55. Global argued precisely that below. But the court never examined the patents' exclusionary potential.

So Tenaris attempts to backfill the district court's decision with new rationales and findings that court never made. According to Tenaris, its patents did not cover

the entire quenched-and-tempered tubing market. Tenaris.Resp.Br.61-66. But the district court made no such finding—indeed, its short ruling contained ***no*** findings—much less the required finding that ***every*** reasonable juror would be compelled to agree. In this very case, moreover, Tenaris asserted that the ***only*** available non-infringing alternative to its (unlawfully) patented quenched-and-tempered tubing was conventional tubing. Factfinders could reasonably infer that, in Tenaris's view, all other quenched-and-tempered products (including Quality's) infringe.

Tenaris's resort to jury argument fares no better. Noting that Tenaris did not assert its patents against Quality after Quality entered the market in 2019, Tenaris asks this Court to ***infer*** specific reasons for that choice—that Tenaris did not believe its patents reached Quality's products or Tenaris had no plan to monopolize. *See* Tenaris.Resp.Br.61-63. But Tenaris ignores the obvious, competing inference: That Tenaris thought better of continuing its monopolization scheme once its fraud was revealed and it was sued for attempted monopolization—both within months of Quality entering. Tenaris concedes it assessed suing Quality. Tenaris.Resp.Br.65. And it produced ***nothing*** to support its new assertion that it declined to sue because of concern about its patents' scope. If that had been the real reason, Tenaris would support its assertion with evidence, not lawyer argument. Regardless, on Tenaris's motion for summary judgment, the court was required to draw all reasonable inferences in ***Global's*** favor.

Alternatively, Tenaris argues that Quality's 2019 entry shows that Tenaris's scheme—even if initially successful in excluding Global in 2017—would not have produced a sufficiently durable monopoly. Tenaris.Resp.Br.66-69. Tenaris's "durability" argument once again amends, rather than defends, the decision below. The district court's decision nowhere mentions "durable" market power. And the argument fails regardless. Quality's eventual entry does not exonerate Tenaris for exclusionary conduct two years earlier. When Tenaris first asserted its fraudulent patents against Global in 2017, Tenaris had 100% market share. Excluding Global ***then*** would have afforded Tenaris a monopoly that would have lasted ***at least two years***—long enough by any measure. Tenaris's patents, moreover, were the ultimate barriers to entry. Tenaris could have wielded them to dominate the market for decades if this lawsuit had not intervened. Once Tenaris succeeded in excluding Global, it would have been well positioned to go after Quality next.

Tenaris's procedural arguments (Br.71-74)—never accepted by the district court—fare worse still. Tenaris cannot credibly contend it was unfairly surprised when, on summary judgment, Global advanced the same theory pled in its operative complaint and repeatedly asserted throughout the litigation. Nor can Tenaris invoke judicial estoppel. Unclean hands bars that equitable defense. And Tenaris cannot satisfy judicial estoppel's requirements regardless.

## ARGUMENT

### I. THE DISTRICT COURT'S DECISION DEFIES GOVERNING ANTITRUST PRINCIPLES

Tenaris's summary-judgment motion focused primarily on a single question: Whether Tenaris's assertion of its fraudulent patents raised a "dangerous probability" that Tenaris would achieve "monopoly power." Appx5778-83. The Supreme Court's decision in *Walker Process Equipment, Inc. v. Food Machinery and Chemical Corp.*, 382 U.S. 172 (1965), controls how to address that question: Courts must closely examine the fraudulent patents' "exclusionary power." *Id.* at 177. The district court concededly failed to conduct that inquiry. Tenaris's effort to provide new rationales on appeal would require this Court to defy summary-judgment standards, draw innumerable disputed inferences in favor of the moving party, and invade the jury's province. Tenaris does not remotely approach the particularly daunting requirements for summary judgment in the antitrust context. *See Powers v. Nassau Dev. Corp.*, 753 F.2d 457, 462 (5th Cir. 1985).

#### A. The District Court's Failure To Perform the Required Examination of Tenaris's Patents Is Fatal

The district court's brief oral decision points to one rationale, and one alone—that Tenaris was a relatively small player when summary judgment was decided. "I think that it would be legal error to hold that such a small market player was engaged in attempted monopolization." Appx31191 (74:16-19). That fixation on market share is legally erroneous. Where the conduct constituting the attempt is "patent fraud," the

would-be monopolist "does not need market power," or substantial market share, to threaten a dangerous probability of success. Herbert Hovenkamp, *Hovenkamp's Principles of Antitrust* 271 (2d ed. 2020). As the leading antitrust authorities explain, the fraudulent patent itself can provide the capacity to exclude competition. *See id.*; Phillip Areeda & Herbert Hovenkamp, *Fundamentals of Antitrust Law* §§7.01[F], 8.05[D] (4th ed.) (2022 update).

That makes sense. Patents confer the power "to exclude" others from practicing the invention. *In re Bilski*, 545 F.3d 943, 953 (Fed. Cir. 2008), *aff'd*, 561 U.S. 593 (2010). Where practicing a patent is essential to compete, the patent confers power to exclude competition. That is the very definition of "monopoly power." *United States v. Grinnell Corp.*, 384 U.S. 563, 576 (1966). As the Supreme Court has explained, where parties assert fraudulently obtained patents, their likelihood of successful monopolization is measured by "the exclusionary power of the illegal patent claim." *Walker Process*, 382 U.S. at 177. Tenaris agrees: "If a patent covers an entire antitrust market, that means the defendant could obtain 100% of that market if its anticompetitive scheme succeeded." Tenaris.Resp.Br.55; *see* Appx31141 (24:7-23) (Global arguing same).

The district court, however, never considered the exclusionary power of Tenaris's illegal patents. *See* Appx31191 (74:16-23). It made no finding on whether Tenaris's patents could have been asserted to exclude others (including Quality).

Nor did it make any finding regarding whether Tenaris would have asserted the patents against others if this lawsuit had not revealed Tenaris's fraud on the PTO. That alone dooms the decision below.

Despite conceding that sufficiently broad patents themselves can create a dangerous probability of monopolization, Tenaris repeatedly invokes its market share. Tenaris points to cases—***not*** involving patents—that supposedly reject attempted-monopolization claims against firms with low market shares. Tenaris.Resp.Br.54-55. But those cases reflect the commonsense point that, ***absent*** a patent or some other exclusionary power, small firms ordinarily lack the capacity to exclude competitors. They neither suggest that market share is dispositive nor displace the Supreme Court's contrary instruction in *Walker Process*. For example, *Dimmitt Agri Industries, Inc. v. CPC International Inc.*, 679 F.2d 516 (5th Cir. 1982) (cited Tenaris.Resp.Br.55, 66), cautions courts "to be wary of the 'numbers game of market percentage' when considering attempts." *Id.* at 533 n.18. And *Domed Stadium Hotel, Inc. v. Holiday Inns, Inc.*, 732 F.2d 480 (5th Cir. 1984) (cited Tenaris.Resp.Br.55-57), instructs that courts assessing whether market share "rises to the level of legal significance" must consider a wide range of market factors, including "barriers to entry," *id.* at 490, such as patents, *see Roy B. Taylor Sales, Inc. v. Hollymatic Corp.*, 28 F.3d 1379, 1388 (5th Cir. 1994).

Here, Tenaris had ***both*** dominant market share ***and*** broad patents when its attempt began. In 2017, it had 100% of the market. Appx5985-88 (¶¶ 19-25). And Tenaris's patents, if upheld, would have been significant barriers to entry insofar as they covered the entirety of the quenched-and-tempered market. Appx11302; Appx11335-36 (305:25-306:5); Appx5991-92 (¶ 32). That was more than enough to give Tenaris's attempt a dangerous probability of success. *See Domed Stadium*, 732 F.2d at 490. Yet the district court ignored both Tenaris's 2017 market share and the breadth of its patents. Reversal is warranted for that reason alone.

### B. Tenaris's Arguments About the Patents' Exclusionary Scope Cannot Salvage the District Court's Decision

Tenaris does not dispute that, if its fraudulently obtained patents covered the "entire antitrust market," Tenaris had a dangerous probability of monopolization (*e.g.*, "obtain[ing] 100% of that market")—regardless of its initial market share. Tenaris.Resp.Br.55. So Tenaris asks this Court to draw a series of inferences to hold that its patents do not cover the quenched-and-tempered tubing market. But the district court did not make the findings, or draw the inferences, Tenaris presses here. Nor could the court have made those findings unless ***every*** reasonable juror would be compelled to do the same. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). And the court was required to draw every reasonable inference in Global's favor. *Moore v. LaSalle Mgmt. Co.*, 41 F.4th 493, 502 (5th Cir. 2022).

Rather than confront those demanding requirements, Tenaris resorts to jury argument. Its effort does not remotely approach the summary-judgment standard—much less in the antitrust context, where summary judgment is disfavored. *Powers*, 753 F.2d at 462.

1. Noting that it ultimately did not assert its patents against Quality, Tenaris asks this Court to infer, in ***Tenaris's favor***, that "Tenaris ***did not*** believe its patents covered Quality's products." Tenaris.Resp.Br.65; *id.* at 61-62 (Tenaris never threatened Quality with suit). Tenaris thus repeatedly invokes its attorney's careful representation that, at the time of the summary-judgment hearing, Tenaris had "'no intention of pursuing' an infringement case against Quality." Tenaris.Resp.Br.46, 52, 62, 65; *see* Appx31172. Notably, that representation of Tenaris's ***then-present*** "intention" says nothing about whether Tenaris ***previously*** intended to sue or threaten Quality—let alone whether it might develop that intention in the future. Tenaris concededly investigated an infringement action against Quality in January 2019—months before Quality even entered the market. *See* Appx11460-61; Appx11475-88; Appx11499; Appx11667-764; Appx9945-47.

Tenaris asks the Court to ***infer*** a highly specific reason—patent scope—for why Tenaris ultimately did not sue Quality. But Tenaris ignores at least three (far more plausible) inferences. ***First***, Tenaris was already engaged in litigation with Global when Quality entered the market. That pending litigation against another

competitor amply suffices to explain any delay in suing Quality. *See Hybritech Inc. v. Abbott Labs.*, 849 F.2d 1446, 1457 (Fed. Cir. 1988).

***Second***, within months of Quality's entry, Global amended its complaint to add inequitable-conduct and attempted-monopolization claims. Appx2057-59. Tenaris likely concluded that, having been accused of attempted monopolization using fraudulently obtained patents, it would be unwise to prove those allegations correct by asserting the same fraudulently obtained patents against Global ***and*** then-new-entrant Quality—its only other competitor. Tenaris's willingness to assert fraudulently obtained patents against Global demonstrated its intent to monopolize. *Cf. TransWeb, LLC v. 3M Innovative Props. Co.*, 812 F.3d 1295, 1309 (Fed. Cir. 2016). That Tenaris had not ***yet*** "'ma[d]e any aggressive moves toward Quality,'" Tenaris.Resp.Br.49-50 (quoting Appx31151), hardly establishes that Tenaris would not have done so once it succeeded in excluding Global—had this suit not intervened. A reasonable jury could certainly find that, absent this monopolization suit, Tenaris would have done just that.

***Third***, by November 2019, just four months after Quality's entry, Appx3269, Tenaris had produced evidence showing the Valdez declaration was not only false (contradicting the withheld CYMAX documents), but was knowingly and deliberately false (Valdez having advocated withholding the CYMAX documents from the PTO). *See* Appx7721. (Tenaris was aware of the issue far earlier; as early as January

2019, it was urging its counsel to resist disclosing the incriminating CYMAX documents. *See* Appx5542-49, Appx5646.) That was a powerful deterrent to suit: Suing Quality in the face of such damning evidence of inequitable conduct could have exposed Tenaris and its counsel to sanctions. This Court has awarded fees against plaintiffs for pursuing infringement claims despite knowing the asserted patents were fraudulently obtained. *See, e.g.*, *Hughes v. Novi Am., Inc.*, 724 F.2d 122, 125 (Fed. Cir. 1984); *Arbrook, Inc. v. Am. Hosp. Supply Corp.*, 645 F.2d 273, 279 (5th Cir. 1981); *see also* D. Hricik, *Patent Ethics: Litigation* 103 (2010).

If Tenaris's ***actual*** reason for not suing Quality were different—for example, that it had decided its patents did not cover Quality's quenched-and-tempered tubing products—Tenaris surely would have produced some contemporaneous document so stating. Its failure to do so makes the inference it presses on this Court particularly implausible. Regardless, this Court must draw all reasonable inferences in ***Global's*** favor. *Moore*, 41 F.4th at 502.[1]

---

[1] The same defects doom the district court's speculation, during argument, that perhaps Tenaris did not really contemplate asserting its patents against Quality but was just running through the "'thought process that other people's patent[s] might impinge on [its] own patent.'" Tenaris.Resp.Br.65 (quoting Appx31188-89). Tenaris produced no documents or evidence supporting such speculation, much less anything sufficient to overcome the far more logical inference—that Global's attempted-monopolization suit and the mounting evidence of Tenaris's patent fraud chilled Tenaris's assertion of the fraudulently obtained patents against Quality.

Tenaris asserts (Br.62) that ***Quality*** did not think its products infringe. But Tenaris cites nothing from Quality for that statement. Tenaris urges that Quality (unlike Global) did not file a declaratory judgment action. Tenaris.Resp.Br.62. But Quality had no reason to file such an action: Global was already in the middle of having Tenaris's patents invalidated for fraud on the PTO. *See* Appx2014-63. Once again, Tenaris inverts the law by asking the Court to draw inferences in favor of the moving party.

2. There was ample evidence that Tenaris believed its patents covered all quenched-and-tempered tubing (including Quality's) and thus had sufficient exclusionary scope to give Tenaris a monopoly. Tenaris's attorneys did not merely assess an infringement suit against Quality. *See* p. 8, *supra*. Tenaris itself represented that Quality's quenched-and-tempered products are ***not*** non-infringing alternatives. Appx11302; Appx11335-36 (305:25-306:5). In this very case, Tenaris emphatically represented that the closest available non-infringing alternative to its quenched-and-tempered tubing was ***conventional*** tubing; ***Quality's*** quenched-and-tempered products were ***not*** identified as non-infringing alternatives to Tenaris's. Appx11302; Appx11335-36 (305:25-306:5). The reason for Tenaris's position is clear: It denied that Quality's quenched-and-tempered tubing is a ***non-infringing*** alternative because, in its view, Quality's products ***do infringe***.

Tenaris again urges the Court to draw a different (less plausible) inference. Tenaris suggests that it did not identify Quality's quenched-and-tempered tubing products as "non-infringing alternatives" because they were not "***acceptable***, and ***available***"—not because they were infringing. Tenaris.Resp.Br.65. That inference is preposterous: Tenaris argues here that Quality "***dominate[s]***" the quenched-and-tempered tubing market, with "71%" market share. Tenaris.Resp.Br.42 (emphasis added); *see id.* at 47, 51, 56, 68, 70-71; *see also id.* at 58 (accusing Quality of having "more than twice Tenaris's market share"). Tenaris nowhere explains how Quality's tubing could both dominate the market yet somehow not be an "acceptable and available" alternative to Tenaris's quenched-and-tempered tubing. Indeed, insofar as Quality's tubing was not "acceptable and available," that underscores Tenaris's dangerous likelihood of success: If consumers could not have turned to Quality's products in "significant" numbers because they were either unavailable or unacceptable, Tenaris's ability to exclude Global threatened to give it the entirety, or nearly the entirety, of the market. *See Ohio v. Am. Express Co.*, 585 U.S. 529, 543 (2018). Regardless, Tenaris at most argues its preferred inferences. This Court cannot, on summary judgment, credit those inferences over Global's.

3. Tenaris's reliance (Br.51, 56-59) on "Global's own experts" fails for the same reasons. Tenaris urges that Global's economic expert "conceded" that the "best"

result Tenaris could achieve was 29% market share. Tenaris.Resp.Br.56. But the district court made no such finding, and a reasonable jury could conclude otherwise.

Tenaris cites testimony assessing what the market would have looked like in 2019, after Quality's entry, if Tenaris had succeeded in excluding Global. However, if Tenaris had succeeded in excluding Global in 2017, when its attempt began, Tenaris would have already enjoyed two years of monopoly power before Quality's 2019 entry. Appx6011 (¶68). Two years of monopoly is monopoly enough. More important, Tenaris's projected 29% market share was the starting point, not the end point. *See* Appx6017 (Ex. 9). Once Global was out of the market, "it would follow as a matter of economic logic" that Quality was next in line for exclusion, giving Tenaris 100% market share. Appx6014 (¶74 n.133). Global is not "disclaim[ing]" its expert. Tenaris.Resp.Br.60 (citing Appx31168 (51:8-15)).[2] To the contrary, Global's expert testified that "patent litigation again[st] Quality Tubing and its exit from the [quenched-and-tempered] coiled tubing business" was "a likely outcome."

---

[2] Nor did Global change positions during summary-judgment briefing. Tenaris.Resp.Br.51. As explained below, pp. 25-27, *infra*, Global argued—from the outset as well as in the run-up to and at summary judgment—that "Tenaris's scheme includes ultimately asserting its fraudulently obtained patents against competitor [Quality] to further concentrate its market power and obtain [a] monopoly." Appx4814-15; *see* Appx31190-91 (73:20-74:1).

Appx5992 (¶32 n.96). Reasonable factfinders could agree. *See* Appx31184 (67:12-15).[3]

## II. THE DISTRICT COURT EXAMINED THE WRONG TIME FRAME

Tenaris does not dispute that, in evaluating whether attempted monopolization poses a "dangerous probability of success," courts must "examine the probability of success at the time the acts occur." *United States v. Am. Airlines, Inc.*, 743 F.2d 1114, 1118 (5th Cir. 1984); *see Taylor Publ'g Co. v. Jostens, Inc.*, 216 F.3d 465, 475 (5th Cir. 2000). As Tenaris concedes (Br.69), courts "must consider the likelihood of success at the time of the conduct." The district court ignored that requirement. It deemed antitrust liability unavailable as a matter of law on the theory that Tenaris is "a small market player." Appx31191 (74:16-18). But Tenaris was ***not*** a "small market player" at the relevant time, when it launched its monopolization campaign by attacking Global in 2017. At that point, Tenaris had 100% of the quenched-and-tempered market, and Global was its only ***potential*** competitor; Quality would not appear on the horizon for years. The district court thus indisputably looked at the

[3] 29% market share was more than enough to threaten Quality. While a third of the market may not be ***an actual monopoly***, Tenaris.Resp.Br.56-57, the Fifth Circuit has recognized that market shares as low as 20% can support ***attempted monopolization*** "depending on other characteristics of the market." *Dimmitt*, 679 F.2d at 533; *see Cliff Food Stores, Inc. v. Kroger, Inc.*, 417 F.2d 203, 207 n.2 (5th Cir. 1969). That includes the presence of barriers to entry, like Tenaris's sweeping patents. *See* pp. 7, 11-12, *supra*. Tenaris does not argue otherwise.

wrong time period. Had Tenaris's 2017 monopolization attempt succeeded, Tenaris would have had the market to itself until 2019 at least.

So Tenaris switches to an argument, based on hindsight, found nowhere in the decision below. It urges that Quality's July 2019 entry—and Tenaris's ensuing loss of market share—shows monopolization was "[i]mpossible" from the start. Tenaris.Resp.Br.65. According to Tenaris, Quality's 2019 entry shows that, even if Tenaris excluded Global, its monopoly would have lacked sufficient "durab[ility]" to support liability. *Id.* at 52. The district court never adopted that theory; its ruling nowhere mentions durability. And the theory is doubly mistaken in any event.

**A.** Tenaris fundamentally misunderstands the concept of "durability." Durability does not require that a would-be monopolist maintain a monopoly for some specified period. Nor does it allow courts to "exonerate" a would-be monopolist through "hindsight" whenever the monopoly proves short-lived. *Multiflex, Inc. v. Samuel Moore & Co.*, 709 F.2d 980, 992 (5th Cir. 1983), *disavowed in part not relevant*, *Deauville Corp. v. Federated Dep't Stores, Inc.*, 756 F.2d 1183, 1192 n.5 (5th Cir. 1985) (addressing Sherman Act § 1 claim); *Am. Airlines*, 743 F.2d at 1118 (similar); *see, e.g.*, *Gen. Indus. Corp. v. Hartz Mountain Corp.*, 810 F.2d 795, 807 (8th Cir. 1987) (summary judgment inappropriate on attempted-monopolization claim because "jury could reasonably have refused to accept [defendant's] use of

hindsight . . . to exonerate it"). There is no multi-year durational threshold for how long a firm must wield monopoly power before liability can attach.

Durability instead refers to the monopolist's projected ability to impose a significant and non-transitory increase in price above competitive levels without losing meaningful market share to competition. *See* U.S. Dep't of Justice, *Competition and Monopoly: Single-Firm Conduct Under Section 2 of the Sherman Act* (Mar. 18, 2022)[4]; U.S. Dep't of Justice and Fed. Trade Comm'n, *Merger Guidelines* § 4.3.A (2023).[5] Tenaris fails to show that excluding Global by 2017—giving it 100% market share for at least two years—could not have given it such power; at the very least, a jury could find otherwise.

The ability to maintain supracompetitive prices depends on market conditions. Factors such as market concentration, "high barriers to entry, consumer demand, strength of the competition, or consolidation trend[s]," all bear on a market's susceptibility to monopolization. *Domed Stadium*, 732 F.2d at 490; *see Adjusters Replace-A-Car, Inc. v. Agency Rent-A-Car, Inc.*, 735 F.2d 884, 894 (5th Cir. 1984); *see* pp. 17-19, *infra*. Where market conditions impede new entry, a firm that illegally excludes existing competition can be guilty of monopolization—even if its dominant

---

[4] https://www.justice.gov/archives/atr/competition-and-monopoly-single-firm-conduct-under-section-2-sherman-act-chapter-2.

[5] https://www.justice.gov/d9/2023-12/2023%20Merger%20Guidelines.pdf.

position is of limited duration. *See, e.g.*, *Geneva Pharms. Tech. Corp. v. Barr Labs. Inc.*, 386 F.3d 485, 501 (2d Cir. 2004) (15-month period); *Tops Mkts., Inc. v. Quality Mkts., Inc.*, 142 F.3d 90, 94 (2d Cir. 1998) (two-year period). Conversely, absent barriers to entry, supracompetitive pricing may not indicate monopoly power because new competitors could profitably enter and undercut those prices. *See, e.g.*, *Williamsburg Wax Museum, Inc. v. Historic Figures, Inc.*, 810 F.2d 243, 252 (D.C. Cir. 1987) (no monopoly power despite 12 months without competition absent barriers to entry). The district court, however, never evaluated market conditions or duration—with reason: Reasonable jurors could easily find, based on the evidence, that Tenaris's scheme would have given it sufficient monopoly power, potentially for decades.

**B.** Here, Tenaris's patents gave it the ultimate barrier to entry—the right to exclude rivals for 20 years, 35 U.S.C. § 154(a)(2). *See Hollymatic*, 28 F.3d at 1388 (identifying "patents" as paradigmatic examples of "significant barriers to entry"); Hovenkamp, *supra*, at 270-71; Areeda & Hovenkamp, *supra* §§7.01[F], 8.05[D]; *see also Bilski*, 545 F.3d at 953. Even if Tenaris's patents did not cover the market—and there was ample evidence they did—the mere "***threat*** of Tenaris's patent litigation alone" created "substantial barriers to entry that limit[ed] the ability of . . . potential entrants to act as a check on Tenaris's potential monopoly power." Appx6023 (¶89) (emphasis added); *see* Appx10830 (186:20-22, 187:23-188:6) (tes-

timony that Tenaris's executive told Global employee at a March 2017 trade show they were "probably going to court"); Appx10869 (Tenaris employees confirming "future legal battle ahead"); Appx10873 (Tenaris employees developing strategy to "attack [Global] with IP rights").

The evidence, moreover, showed that Tenaris was unlikely to be disciplined by potential competition. The universe of "likely entrants" was limited to the six "manufacturers who already produce conventional coiled tubing." Appx6023 (¶89). Of those, only Tenaris, Global, and Quality were plausible market participants: There was "no evidence" that two of the other coiled-tubing manufacturers would enter the market, and the third was unlikely to enter the United States market "where the vast majority of Q&T usage occurs." *Id.*

**C.** Even if one assumes (*dubitante*) that the antitrust laws impose some sort of durational monopoly requirement, summary judgment was nonetheless improper. Tenaris conceded it could have "obtained a majority market share . . . after the '256 patent issued in 2017." Tenaris.Resp.Br.52. As Tenaris admits (Br.52), once it excluded Global, it would have held an absolute monopoly of at least two years (until Quality's entry in 2019). That is long enough. Whether a "period of exclusivity [that] lasted about 15 months" was "of sufficient duration to have significant anti-competitive effects," or "should be viewed as a transitory advantage inherent in being a first entrant," "involve[d] a genuine question of material fact"

that "should not be resolved at the summary judgment stage because to do so requires weighing the evidence, which is a matter left for a jury." *Geneva Pharms.*, 386 F.3d at 501. *A fortiori*, a period of 24 months does, too.

That is particularly true given the highly concentrated market—few actual participants and few potential entrants. *See* p. 18, *supra*. Consequently, Tenaris cannot prevail on summary judgment by arguing that Quality's entry, two years after Tenaris's monopolization attempt, proves there were never "sufficient barriers to entry to create a dangerous probability of monopolization." Tenaris.Resp.Br.69. Subsequent events may confirm a court's assessment of market conditions at the time of the attempt. But "the fact that entry has occurred does not necessarily preclude the existence of 'significant' entry barriers"—let alone the existence of such barriers two years earlier. *See Rebel Oil Co. v. Atl. Richfield Co.*, 51 F.3d 1421, 1440-41 (9th Cir. 1995); *see, e.g.*, *Lenox MacLaren Surgical Corp. v. Medtronic, Inc.*, 762 F.3d 1114, 1125 (10th Cir. 2014) (genuine issue of fact existed concerning dangerous probability of monopolization despite entry of competitor); *Multistate Legal Studies, Inc. v. Harcourt Brace Jovanovich Legal & Pro. Publ'ns, Inc.*, 63 F.3d 1540, 1555-56 (10th Cir. 1995) (similar); *Tops Mkts.*, 142 F.3d at 99, 101 (similar). Here, moreover, Quality entered the market only after Global filed suit to challenge Tenaris's patents and just a few months before Global revealed that the significant barriers to entry Tenaris had erected (its fraudulently obtained patents)

were unenforceable for fraud. Appx2014-63; Appx5989-90(¶¶27-28). Quality's entry in those circumstances raises—at most—another factual dispute precluding summary judgment.

*Deauville* is not to the contrary. *See* Tenaris.Resp.Br.67-68. There, the court held that a developer did not threaten to monopolize the regional-mall-space market where the only potential barriers to entry were the availability of land and retailers willing to serve as anchor tenants. At the time of the alleged attempt, however, there were "at least two other mall sites" available and several major retailers "capable of anchoring" malls at those sites. 756 F.2d at 1190. The existence of those tenants and those sites—which were subsequently "developed into regional malls"—confirmed the market was not susceptible to monopolization at the time of the attempt. *Id.* "In a market which would allow such competition," the court reasoned, "there was no dangerous probability that an attempt to monopolize could succeed." *Id*. at 1191. The specialized market for quenched-and-tempered tubing is markedly different: It is characterized by significant barriers to entry, such as high concentration, industry-specific requirements, and threats of patent litigation. *See* p. 17-19, *supra*. And a jury could easily conclude that Tenaris's patents were the ultimate barriers to entry, which Tenaris would have asserted against Quality once it disposed of Global.

Tenaris asks this Court to ignore that evidence and infer that, because Quality entered, Quality must have had "'work-around[s]' to Tenaris's '256 patent." Tenaris.Resp.Br.68 (brackets in original). That does not merely invert the summary-judgment standard; it lacks record support. Tenaris cites ***zero*** evidence Quality had a design-around.[6] A reasonable jury could make the far more plausible inference that Quality entered because Global's lawsuit—which bogged Tenaris's patents down in litigation and ultimately exposed their unenforceability—foiled Tenaris's monopolization scheme. Even if there were competing inferences, all inferences must be drawn against Tenaris and against the grant of summary judgment.

* * * * *

Ultimately, Tenaris's effort to ***defend*** summary judgment on the attempted-monopolization claim is at war with its effort to ***attack*** summary judgment on inequitable conduct. With no record basis to rescue the district court's erroneous antitrust analysis, Tenaris asks this Court to draw dubious inference after dubious inference in its favor. But the law requires all reasonable inferences to be drawn against Tenaris and in Global's favor. And "summary judgment is especially

[6] Tenaris invokes Global's damages expert, who explained that Global suffered "lost profit[s] from the delay in Global Tubing's launch of the DC130 product that result[ed] from its need to develop a work-around to the Parent patent." Appx6024-25 (¶92); *see* Tenaris.Resp.Br.68. But Tenaris ***disputes*** that Global successfully designed around its fraudulent patents. Appx2066-67 (¶2) (alleging Global "cop[ied]" Tenaris's product). And Tenaris points to no evidence that ***Quality*** developed a workaround.

***disfavored*** in 'complex, fact-sensitive ***antitrust cases***.'" *C.E. Servs., Inc. v. Control Data Corp.*, 759 F.2d 1241, 1245 (5th Cir. 1985) (emphasis added); *Powers*, 753 F.2d at 462.

At the same time, Tenaris attacks the district court's grant of summary judgment on inequitable conduct—under the usual summary-judgment standard—by arguing its conduct before the PTO is "susceptible of different interpretations." Tenaris.Resp.Br.5. There may be multiple "interpretations" of Tenaris's conduct toward its competitors in the market; multiple possible market definitions; multiple views of the power provided by Tenaris's patents. But there are not multiple possible views of Tenaris's conduct before the PTO. Tenaris intentionally withheld the CYMAX documents from the PTO; gave the PTO a false declaration contradicting those withheld documents; badgered its lawyers to avoid submitting the documents in connection with later patents; and ultimately submitted only partial versions with pages omitted and content rearranged. And the law gives courts comparably "greater discretion" to grant summary judgment on equitable issues that the court itself will decide—where having the judge hear "the same evidence" at summary judgment or "in a plenary trial" would not "lead to a different result." *Johnson v. Diversicare Afton Oaks, LLC*, 597 F.3d 673, 676 (5th Cir. 2010); *see Nunez v. Superior Oil Co.*,

572 F.2d 1119, 1124 (5th Cir. 1978).[7] Tenaris's effort to simultaneously attack and defend the district court's two summary-judgment decisions faces insurmountable legal and factual headwinds in both directions.

## III. The District Court's Failure To Define The Relevant Market Precludes Summary Judgment

The district court nowhere identified the relevant product and geographic markets. Global defined them as quenched-and-tempered coiled tubing sold in the United States. Appx5993-94(¶¶34-35); Appx10757-59. Tenaris asserted the relevant market was coiled tubing generally (including conventional tubing) worldwide. Appx5785-93; *see* Tenaris.Resp.Br.59 n.9 (summarizing Tenaris's evidence); Global.Br.74-77 (summarizing Global's evidence). Tenaris concedes the district court did not purport to resolve that dispute. That precludes summary judgment: Without defining "the relevant market for the product involved," "there is no way to

[7] Although Tenaris insists that Global "agree[d] to try the inequitable conduct claim to a jury," Tenaris.Resp.Br.10, inequitable conduct is undisputedly a "matter for the trial judge, and not the jury." *Baxter Healthcare Corp. v. Spectramed, Inc.*, 49 F.3d 1575, 1584 (Fed. Cir. 1995); *Energy Heating, LLC v. Heat On-The-Fly, LLC*, 889 F.3d 1291, 1299 (Fed. Cir. 2018) ("committed to the discretion of the trial court"). Parties cannot change that rule. Besides, Tenaris's argument is that, insofar as there are factual questions ***common to both the inequitable-conduct and antitrust claims***, the parties agreed that those common issues would be tried to the jury. Tenaris.Resp.Br.10. That is irrelevant: When the district court decided inequitable conduct, the antitrust claims had already been dismissed, leaving ***only*** equitable claims for the court to decide. And Tenaris never argues that reinstatement of the antitrust claims would entitle it to a jury trial on inequitable conduct. It argues only that its conduct was subject to competing inferences, without regard to whether the antitrust claim persists.

measure [a defendant's] ability to lessen or destroy competition." *Walker Process*, 382 U.S. at 177.

Tenaris's assertion that the district court "assumed Global's preferred market definition," Tenaris.Resp.Br.58 (emphasis omitted), is devoid of support. The court's rationale was that Tenaris is a "small market player." Appx31191 (74:16-19). Nothing in that statement indicates which market definition the court adopted. Indeed, the court's rationale is equally consistent with ***Tenaris's*** preferred market definition, under which Tenaris had relatively ***smaller*** market share.

In a footnote, Tenaris contends (Br.59 n.9) that "undisputed" evidence favored ***its*** market definition. "Arguments raised only in footnotes," however, "are waived." *Otsuka Pharm. Co. v. Sandoz, Inc.*, 678 F.3d 1280, 1294 (Fed. Cir. 2012). Regardless, Tenaris is mistaken. Global's expert testified that quenched-and-tempered tubing comprises a distinct market from conventional coiled tubing because conventional tubing cannot substitute for quenched-and-tempered. "[C]onventional coiled tubing," he explained, "cannot be used effectively in environments in which Q&T coiled tubing is normally implemented." Appx10912-13 (¶44); *see* Global.Br.75; Appx5957 (107:24-108:13). Tenaris's expert disagreed. *See* Tenaris.Resp.Br.59 n.9. But market definition is quintessentially a fact question for the jury. *Access Telecom, Inc. v. MCI Telecomms. Corp.*, 197 F.3d 694, 719 (5th Cir. 1999). The

clash between Tenaris's and Global's experts on the issue underscores that summary judgment was inappropriate.

## IV. TENARIS'S PROCEDURAL ARGUMENTS LACK MERIT

Tenaris urges affirmance on procedural grounds not adopted by the district court. Tenaris.Resp.Br.71-74. Neither ground has merit.

### A. Global Pled and Repeatedly Affirmed Its Antitrust Theory

Tenaris argues it was unfairly "surprise[d]," at summary judgment, by the argument that its threat to enforce the '256 Patent constituted attempted monopolization. Tenaris.Resp.Br.72-73. The argument lacks merit for multiple reasons.

Tenaris invokes the rule that parties cannot advance "***unpled*** theories of liability" to oppose summary judgment. Tenaris.Resp.Br.72-73 (emphasis added); *see Whitaker v. Milwaukee Cty.*, 772 F.3d 802, 808-09 (7th Cir. 2014); 5C Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* §1219 (3d ed. 2004).[8] But Global clearly ***pled*** that Tenaris used the '256 Patent to attempt monopolization, detailing how integral the '256 Patent was to Tenaris's scheme.

[8] The cases Tenaris cites (Br.73) are consistent with that rule. *See Pittman v. U.S. Bank NA*, 840 F. App'x 788, 789-90 (5th Cir. 2021) (mem.) (affirming rejection of unpled theory of liability "raised for the first time during summary judgment briefing"); *Miranda-Rivera v. Toledo-Davila*, 813 F.3d 64, 75-76 (1st Cir. 2016) (affirming summary judgment because complaint "fail[ed] to adequately plead facts" supporting "new, unpled" theory); *Casa de Cambio Comdiv S.A., de C.V. v. United States*, 291 F.3d 1356, 1366 (Fed. Cir. 2002) (similar). Global's reliance on the '256 Patent was neither new nor unpled.

Appx2058-59 (¶¶ 146-52). Global's Sixth Cause of Action alleged that Tenaris committed *Walker Process* fraud by procuring and enforcing the "***Asserted Patents***." *Id.* (emphasis added). That clearly includes all patents Tenaris asserted in its infringement counterclaim—the Children Patents ***and*** the '256 Patent.[9] Insofar as Tenaris contends more was needed, it demands more than the Federal Rules require: A "short and plain statement of the claim" suffices. *Johnson v. City of Shelby*, 574 U.S. 10, 11 (2014).

Global, moreover, repeatedly invoked the '256 Patent—without objection from Tenaris—including in the run-up to summary judgment. In interrogatory responses served ***four months*** before summary-judgment briefing began, Global contended that Tenaris's anticompetitive "scheme included obtaining the '256 patent . . . through fraud on the Patent Office"; "threaten[ing] Global with enforcement of the '256 patent; [and] assert[ing] the '256 patent against Global." Appx4814. Global reiterated the point at a hearing ***weeks before*** Tenaris filed its opening summary-judgment brief. The "*Walker Process* claim," Global explained, "***stems***

[9] Tenaris asserted infringement of the '256 Patent in March 2019, Appx8710, making it an asserted patent when the operative complaint was filed in December 2019, Appx2063; *see* Appx12525 (¶ 57). When the complaint referred to the '256 Patent separately from the '074 and '075 patents, it did so expressly. *Compare* Appx2057 (¶¶ 136-37), Appx2060 (¶¶ 153-58) (causes of action based on '256 Patent); Appx2057 (¶¶ 138-39), Appx2057-58 (¶¶ 142-43), Appx2060-61 (¶¶ 159-63) (causes of action based on '074 and '075 patents, *i.e.*, "the Children Patents"), *with* Appx2057 (¶¶ 140-41), Appx2058-59 (¶¶ 146-52), Appx2061 (¶¶ 164-70) (causes of action based on "Asserted Patents," *i.e.*, "All Patents").

***from fraud from the '256 patent*.**" Appx30964-65 (emphasis added). Tenaris cannot seriously maintain it was surprised when Global made the same argument in opposing summary judgment. And Tenaris cannot plausibly maintain unfair surprise before this Court where, despite similar arguments below, the district court found none. *Motion Med. Techs., L.L.C. v. Thermotek, Inc.*, 875 F.3d 765, 771 & n.1 (5th Cir. 2017) (waiver determinations left to district court discretion).

Arguing "untimeliness," Tenaris asserts that Global "disclaimed" reliance on the '256 Patent when it opposed Tenaris's motion to dismiss. Tenaris.Resp.Br.72. The district court again found neither untimeliness nor disclaimer, and Tenaris nowhere suggests the court abused its discretion. *See id.* at 71-74. Nor is there any evidence that Tenaris or the district court ever relied on the purported disclaimer. The Complaint was never amended to remove explicit allegations that Tenaris had asserted its fraudulently obtained '256 Patent as part of its monopolization attempt; those allegations remained in place through summary judgment. And, as explained above, Global repeatedly invoked Tenaris's fraudulent acquisition and assertion of the '256 Patent to support its attempted-monopolization claim ***after*** the motion to dismiss ruling—without objection—including just before summary judgment. The statement that Global's "*Walker Process* claim . . . stems from fraud from the '256 patent" is unambiguous. This Court cannot find surprise or waiver, especially where the trial court did not.

### B. Judicial Estoppel Does Not Apply

Tenaris's reliance on judicial estoppel fares worse still.

***First***, a "party cannot rely on judicial estoppel if it comes to the court with unclean hands." *In re Galaz*, 841 F.3d 316, 326-27 (5th Cir. 2016); *Egenera, Inc. v. Cisco Sys., Inc.*, 972 F.3d 1367, 1378 (Fed. Cir. 2020). Tenaris's hands are as unclean as unclean can be. Global.Br.45-52. As the district court found, the evidence of Tenaris's fraud was "stark," Appx14—certainly enough to sully Tenaris's hands. To overcome the Examiner's initial rejection on obviousness grounds, Tenaris intentionally withheld the CYMAX documents from the PTO, knowingly gave the PTO a false declaration contradicting those documents, and then withheld documents both in this litigation and from the PTO to cover up its fraud.

That occurred on the recommendation of Tenaris's lead inventor (Valdez), who was intimately familiar with the CYMAX documents, the ongoing prosecution of the '256 Patent, and the Examiner's reasons for rejecting the application. Appx5387-93; Appx5419-27; Appx5491; Appx7721. Aware that the CYMAX documents disclosed the features Tenaris was going to identify as "novel" to overcome rejection, *see* Appx5493, Valdez told Tenaris's counsel he was "not sure it is a good idea to disclose" them—advice Tenaris heeded, Appx7721. Having thus obtained the patent, Tenaris then sought to avoid disclosure of the incriminating Valdez declaration ***in this litigation***. It withheld that and other documents in discov-

ery until March 2021—***nearly a year after the purported disclaimer***—when the Magistrate Judge compelled Tenaris to produce the documents and related discovery under the crime-fraud exception. Appx4039-50. Such inequitable conduct "closes the doors" to equitable relief. *Precision Instr. Mfg. Co. v. Auto Maint. Mach. Co.*, 324 U.S. 806, 814, 816 (1945).

***Second***, Tenaris cannot meet black-letter requirements for judicial estoppel. Because judicial estoppel protects judicial integrity by avoiding "inconsistent results," the doctrine's "application . . . is unwarranted" absent proof the court ***accepted*** the allegedly inconsistent prior position. *In re Oparaji*, 698 F.3d 231, 237 (5th Cir. 2012). Tenaris offers no evidence that the court "accept[ed]" or relied on the prior position, "as is required for judicial estoppel." *Dacar v. Saybolt, L.P.*, 914 F.3d 917, 927 (5th Cir. 2018). Tenaris thus does not remotely approach the doctrine's high bar—proof, "by competent evidence or ***inescapable inference***," that the court "adopted or relied upon the previous inconsistent assertion." *Perry v. Blum*, 629 F.3d 1, 11-12 (1st Cir. 2010) (emphasis added); *Ahrens v. Perot Sys. Corp.*, 205 F.3d 831, 836 (5th Cir. 2000).

Tenaris offers ***no*** evidence of "acceptance" or "reliance" at all. The district court's denial of Tenaris's motion to dismiss comprises a single sentence: "I think the pleadings are adequate." Appx31331 (24:15-18). That six-word denial says nothing about reliance or acceptance. Tenaris says the court must have accepted

Global's supposed disclaimer because, in arguing dangerous probability of success, Global relied on "that argument alone." Tenaris.Resp.Br.73-74. Not so: The language Tenaris relies on is a single-paragraph fallback that appears only after Global presented two other grounds for denying Tenaris's motion, each independently sufficient to support denial. Global first argued that its allegations regarding Tenaris's 2017 market share were sufficient to plead a dangerous probability of achieving monopoly power, as (1) Global and Tenaris were then the only players in the quenched-and-tempered market, and (2) Global alleged that Tenaris possessed a "dominant market share." Appx12404-07. Global then argued that Tenaris's fraudulently procured patents—including the '256 Patent—collectively created a dangerous probability of success, because their broad coverage "create[d] a barrier to entry." Appx12407-10; *see* Appx12409 (citing Appx12681(¶227) (describing '256 Patent's scope))). The supposed "disclaimer" appears only later, in a single, final, paragraph. Appx12410.

The district court could well have found a dangerous probability of success properly pled for either of those reasons without "necessarily accept[ing]" Global's purported disclaimer. *Ahrens*, 205 F.3d at 836. Tenaris's contrary "[c]onjecture, without more, cannot support the application of judicial estoppel." *Perry*, 629 F.3d at 13; *see Afram Carriers, Inc. v. Moeykens*, 145 F.3d 298, 303-04 (5th Cir. 1998); *Barrie v. Nueces Cty. Dist. Att'y's Office*, 753 F. App'x 260, 266 (5th Cir. 2018).

***Third*,** Tenaris ignores the requirement to prove that Global would "derive an unfair advantage . . . if not estopped." *New Hampshire v. Maine*, 532 U.S. 742, 751 (2001); *Portillo v. Permanent Workers, LLC*, 793 F. App'x 255, 260 (5th Cir. 2019). Tenaris does not argue, for example, that it was deprived of discovery or adequate time to address Global's antitrust theory. Tenaris made no such arguments below. It never sought an accommodation in discovery despite Global consistently re-affirming its reliance on the '256 Patent as evidence of attempted monopolization prior to summary judgment. *See* pp. 26-27, *supra*. Tenaris's failure even to address "unfair advantage" in its brief is fatal.

Estoppel would not offer a basis to affirm regardless. Judicial estoppel is committed to the trial court's discretion and may depend on that court's factfindings. *ASARCO, L.L.C. v. Mont. Res., Inc.*, 858 F.3d 949, 958 (5th Cir. 2017). This Court cannot affirm by exercising discretion that the law vests in the trial court in the first instance. *See, e.g.*, *Double Eagle Energy Servs., LLC v. MarkWest Utica EMG, L.L.C.*, 936 F.3d 260, 264 (5th Cir. 2019).

## CONCLUSION

The district court's order granting summary judgment on Global's *Walker Process* claim should be reversed.

June 3, 2024

Respectfully submitted,

/s/ Jeffrey A. Lamken

Jeffrey A. Lamken
*Counsel of Record*
Rayiner I. Hashem
Lauren M. Weinstein
Walter H Hawes IV
Lois S. Ahn*
MOLOLAMKEN LLP
The Watergate, Suite 500
600 New Hampshire Avenue, N.W.
Washington, D.C. 20037
(202) 556-2000 (telephone)
(202) 556-2001 (fax)
jlamken@mololamken.com

Eugene A. Sokoloff
MOLOLAMKEN LLP
300 N. LaSalle Street, Suite 5350
Chicago, IL 60654
(312) 450-6700 (telephone)
(312) 450-6701 (fax)

**Admitted only in New York; practice limited to matters before federal courts and federal agencies*

R. Paul Yetter
Jeffrey A. Andrews
Matthew C. Zorn
YETTER COLEMAN LLP
811 Main Street, Suite 4100
Houston, TX 77002
(713) 632-8000 (telephone)
(713) 632-8002 (fax)
pyetter@yettercoleman.com

*Counsel for Cross-Appellant Global Tubing LLC*

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS

**Case Number:** 23-1882, 23-1883

**Short Case Caption:** Global Tubing LLC v. Tenaris Coiled Tubes LLC

**Instructions:** When computing a word, line, or page count, you may exclude any items listed as exempted under Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), or Fed. Cir. R. 32(b)(2).

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

- [x] the filing has been prepared using a proportionally-spaced typeface and includes 6,991 words.

- [ ] the filing has been prepared using a monospaced typeface and includes ___________ lines of text.

- [ ] the filing contains ___________ pages / ___________ words / ___________ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. ___________).

Date: 6/3/2024

Signature: /s/ Jeffrey A. Lamken

Name: Jeffrey A. Lamken